**ORIGINAL**

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN YACCINO,<br>  Plaintiff | : | 3:CV-00-2231 |
| | : | |
| vs. | : | FILED<br>HARRISBURG, PA |
| | : | NOV 15 2002 |
| HAZLETON AREA<br>SCHOOL DISTRICT,<br>  Defendant | : | MARY E. D'ANDREA, CLERK<br>Per _____ Deputy Clerk<br>Judge Caputo |

## PLAINTIFF'S TRIAL BRIEF

### I.   STATEMENT OF FACTS

The Plaintiff, John Yaccino ("Plaintiff") was hired as head football coach for Defendant Hazleton Area School District ("Defendant" or "School District) in 1995. His first season as head football coach was the 1996 season.

At the conclusion of the 1999 season, Chris Perry, Athletic Director for Defendant, evaluated Plaintiff's performance under a regulation then in place in the School District for evaluating the performance of head coaches. He recommended that Plaintiff be retained as the School District's head football coach for the next (2000) football season.

In November, 1999, a new majority was elected to Defendant's School Board. At an organizational meeting held December 6, 1999, the "new" School Board members were installed. A priority of the new School Board was the replacement of Plaintiff as Head Football Coach for Hazleton Area School District, in favor of a younger coach.

A letter was generated by a newly formed "Adjunct Student Services and Community Relations Committee" on or about January 17, 2000, which stated: "After much discussion it is also the recommendation of the committee to open the position of Head Football Coach effective immediately." The Plaintiff was not a party of any of the referenced discussions.

At its first regular meeting on January 27, 2000, the new Board removed Plaintiff as the Head Football Coach. In effect, Plaintiff was terminated as Head Football Coach at Hazleton Area High School. Plaintiff reapplied for the Head Football Coach position, but was rated as the third most qualified candidate following the submission of applications and an interview of each applicant, in which a majority of the school board had authorized the entire school board to participate. Two significantly younger, less experienced candidates were rated higher following the interviews. One of the younger candidates – Rocco Petrone – was selected as the new Head Football Coach for Hazleton Area High School.

## II.    STATEMENT OF EVIDENCE TO BE PRESENTED

A "List of Exhibits" is attached to Plaintiff's Amended Pretrial Memorandum. A revised version of that list is attached hereto. The revised List of Exhibits adds no additional item of documentary evidence, but clarifies the prior List of Exhibits by re-numbering the documentary exhibits in that list, in accordance with their anticipated order of presentation during trial; and by striking through exhibits referenced thereon that will be used only for impeachment and/or refreshing the recollection of witnesses.

In addition, there is an entry on Plaintiff's original List of Exhibits, at Plaintiff's Ex. 51, for "Head Football Coach interview score sheets of interviewers." In the revised List of Exhibits attached hereto, Plaintiff has added an itemized list that individually numbers those exhibits, by anticipated order of presentation.

Virtually all of Plaintiff's documentary evidence will be documents generated and/or produced by the Defendant School District. Based upon consultation with Defense Counsel, Plaintiff does not anticipate any objections from the defense, as to authenticity. Based upon the sheer volume of exhibits, Plaintiff cannot anticipate all potential admissibility issues that may be raised by Defendant

Plaintiff does anticipate an objection from the Defendant to the testimony of William Schneider. Plaintiff anticipates calling Mr. Schneider as a fact witness, for the sole purpose of testifying to a standard calculation of the pension benefits that the Plaintiff stands to lose, by virtue of the omission of his coaching salary from the year 2000 from pension contributions that would have been made by the Defendant, on Plaintiff's behalf.

Regarding the objection, (1) Defendant was aware, as early as March, 2002, of Plaintiff's intent to call Mr. Schneider as a witness; (2) the information upon which Mr. Schneider's calculation is based was equally if not more readily available to the Defendant; and (3) Counsel have discussed the possibility of bifurcation of this case into liability and damages phases. To the extent liability is established, Plaintiff should be permitted to provide undisputed testimony as to pension contributions that would have been made, by Defendant, had Plaintiff been retained as head football coach for at least one additional year.

3

## Plaintiff's Witnesses

<u>1.    Case in Chief</u>

Plaintiff anticipates calling the following witnesses, in the following order, in his case in chief; and introducing the exhibits listed after the named witness, during their testimony. The listed exhibits are numbered to coincide to the revised and re-numbered List of Exhibits attached hereto.

      a.    John Yaccino, Plaintiff

           1.    March 28, 1995 letter from Plaintiff to Dr. Shepperson
           2.    November 21, 1995 letter from Plaintiff to Chris Perry
           3.    Head Football Coach ("HFC") evaluations - 1996 through 1999 seasons
           4.    February 14, 2000 reapplication by Plaintiff for HFC position

      b.    Geraldine Shepperson, HASD Superintendent

           5.    HASD Athletic Policies, Revised 1997-98
           6.    HASD Coaches Handbook/Athletic Policies, Revised 2000-2001
           7.    November 3, 1997 letter from Dr. Shepperson to Plaintiff
           8.    December 7, 1999 letter from Dr. Shepperson to Plaintiff

      c.    Francis Libonati

      d.    William Schneider (Damages only)

      e.    Marianne Yaccino (Damages only)

<u>(As on Cross)</u>

      f.    Chris Perry

           9.    Evaluation of Coaches - John Yaccino, 8th Grade Boys Basketball; 1999-2000 season

           10.   Athletic Evaluation Forms

      g.    Gilbert Degenhart

           11.   Excerpts of tape recording of School Board Meeting of January 27, 2000

        12.    Athletic Interview Forms

   h.    Marie Kay

        13.    Athletic Interview Forms

   i.    Robert Childs

        14.    Athletic Interview Forms

   j.    Betsy Durso

        15.    Athletic Interview Forms

   k.    Jack Shema

        16.    Athletic Interview Forms

   h.    Carmella Yenkevich

        17.    Athletic Interview Forms

   l.    Thomas Scarpati

   g.    Steven Hahn

2.    <u>Rebuttal</u>

   a.    Georgia Motto

   b.    Phil Bonfair

   c.    Neil Graziano

   d.    Mark Koskulitz

   e.    James Marnell

   f.    Robert Gavio

   g.    Jeff Gilbert

      h.     Matt Berger

<u>Stipulated Exhibits</u>

18. Pesock letter of January 17, 2000

19. Notice of acceptance of Head Football Coach Application

20. Ranking of HFC Applicants by average score

21. Petrone Athletic Interview Forms

22. Application of Rocco Petrone

23. Koskulitz Athletic Interview Forms

24. Application of Mark Koskulitz

25. Yaccino Athletic Interview Forms

26. HASD Senior High Sports Coaches' Salaries

27. HASD Hiring Policy for High School Varsity Athletic Coaches

28. Past/Future Procedures for Interviewing and Hiring Varsity Coaches

29. Summary: Football Income 1992 - 2000

30. Yaccino Teacher Evaluations 1997-2000

## III    STATEMENT OF LEGAL ISSUES

Plaintiff believes that the following legal issues are relatively straightforward and undisputed:

1. Was Plaintiff John Yaccino a victim of age discrimination, by Defendant Hazleton Area School District, under the Age Discrimination in Employment Act and/or the Pa. Human Relations Act?[1]

2. If Plaintiff was a victim of age discrimination, was the discrimination "willful?" (Authorizing an award of liquidated damages in an amount equal to twice Plaintiffs' lost wages)

3. If Plaintiff was a victim of age discrimination, what are his damages?

## IV.    OTHER MATTERS

In an article printed in the Sunday, November 10, 2002 edition of the Wilkes-Barre Times Leader, hearsay comments negative to Plaintiff, stated in Defendant's pretrial Memorandum; and attributed to former players of Plaintiff, were quoted at length. At the time Pretrial Memoranda were filed by the parties, Defendant knew, or should have known that these potential witnesses had not been approved; and that a dispute had arisen regarding Defendant's ability to call these witnesses to testify at trial.

---

[1] The legal standards, and therefore jury charge, are virtually identical under both Acts. The only substantive difference is that the Pa. Human Relations Act authorizes an award of "compensatory damages."

7

Plaintiff believes that Plaintiff has been severely prejudiced, and his ability to obtain a fair trial compromised, in violation of Middle District Rule 83.2.7, by Defendant's inclusion of these negative and derogatory statements in its Pretrial Memorandum, despite a dispute as to the approval of these individuals as witnesses - resulting in the widespread publication of the derogatory statements by the Times Leader. Plaintiff requests (particularly in light of his pending objection to the approval of these individuals as witnesses), that the Court sanction Defendant by prohibiting the individuals to who statements have been attributed, from testifying at trial.

Respectfully submitted,

Date: 11/15/02

Keith E. Kendall, Esq.
Attorney For Plaintiff
3207 North Front Street
Harrisburg, PA 17110

8